IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>BOBBIE T. FERNSIDE,<br><br>        Defendant.<br><br>BOBBIE T. FERNSIDE,<br><br>        Counterclaimant,<br><br>        v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>        Counterdefendant. | Case No. 3:22-cv-00198-SLG |

## ORDER RE PENDING MOTIONS

Before the Court at Dockets 73, 77, 83, and 91 are three motions for summary judgment and a motion *in limine*. At Docket 73 is Plaintiff and Counter-Defendant Allstate Fire and Casualty Insurance Company's ("Allstate") Motion for Summary Judgment. Defendant and Counter-Claimant Bobbie Fernside responded in opposition to the motion at Docket 78. At Docket 77 is Mr. Fernside's Motion for Partial Summary Judgment. Allstate responded in opposition at Docket 82. At Docket 83 is Allstate's Motion for Partial Summary Judgment on Mr.

Fernside's Bad Faith Claim. Mr. Fernside responded in opposition at Docket 94. Finally, at Docket 91 is Allstate's Motion *in Limine* regarding an expert Mr. Fernside proffered. Mr. Fernside responded in opposition at Docket 98. The Court heard oral argument on the motions for summary judgment on July 15, 2024.

Upon due consideration, Allstate's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**; Mr. Fernside's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**; Allstate's Motion for Partial Summary Judgment on Mr. Fernside's Bad Faith Claim is **GRANTED**; and Allstate's Motion *in Limine* is **DENIED AS MOOT**.

## BACKGROUND

The parties agree that the material facts are not in dispute.[1] On July 17, 2021, Mr. Fernside was driving a 2010 Chrysler when he was involved in a collision with a driver who fled the scene.[2] At the time of this accident, Mr. Fernside was logged into the Lyft Driver application ("app"), had accepted a Lyft rider's request for a ride, and was driving to the rider's pick-up location.[3] No passengers were in Mr. Fernside's vehicle at the time of the accident.[4] Mr. Fernside had enabled the

---

[1] Docket 73-1 at 9; Docket 77-1 at 3.

[2] Docket 73-1 at 9.

[3] Docket 73-8 at 15–16; Docket 73-9 at 4.

[4] Docket 73-1 at 14; Docket 73-9 at 4.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 2 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 2 of 20

Lyft app's auto-accept feature, which accepted the request of the rider to whom he was traveling prior to the collision.[5]

Mr. Fernside purchased an automobile insurance policy ("the Policy") from Allstate that was in effect on July 17, 2021.[6] The Policy included uninsured/underinsured motorist ("UM/UIM") coverage[7] and automobile medical payment ("MedPay") coverage,[8] which both applied to the vehicle that Mr. Fernside was driving at the time of the accident.[9] However, the Policy provided that both of these coverage provisions were subject to a business use exclusion.[10] For an additional premium, Mr. Fernside also purchased the Allstate Ride for Hire Endorsement, which modified the business use exclusion as it applied to UM/UIM coverage, but not MedPay coverage. This endorsement applied to the vehicle Mr. Fernside was driving at the time of the accident.[11]

On July 29, 2021, Mr. Fernside submitted a claim for UM/UIM and MedPay benefits to Lyft's insurer, Indian Harbor Insurance Company ("Indian Harbor").[12]

---

[5] Docket 73-9 at 4.

[6] Docket 73-3 at 7.

[7] Docket 73-3 at 39–42.

[8] Docket 73-3 at 25–27.

[9] Docket 73-3 at 9–10.

[10] Docket 73-3 at 40 (UM/UIM coverage); Docket 73-3 at 26 (MedPay coverage).

[11] Docket 73-3 at 13–14.

[12] Docket 73-10.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 3 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 3 of 20

However, Lyft previously had declined UM/UIM coverage from its insurer.[13] Accordingly, on August 5, 2021, Indian Harbor notified Mr. Fernside that the policy under which Lyft was insured lacked UM/UIM coverage.[14] Later, in September 2022, Indian Harbor paid out MedPay benefits to Mr. Fernside to the limits of Lyft's policy.[15]

On August 5, 2021, Mr. Fernside, through counsel, contacted Allstate regarding a personal injury claim.[16] Allstate then filed the instant action for declaratory relief, seeking the Court's determination of its coverage obligations.[17] Mr. Fernside counterclaimed against Allstate for breach of contract and breach of the covenant of good faith and fair dealing.[18]

This Court has subject matter jurisdiction based on diversity of citizenship.[19]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of

---

[13] Docket 73-12.

[14] Docket 73-13 at 1.

[15] Docket 73-14.

[16] Docket 73-14 at 3–4.

[17] Docket 1; Docket 38.

[18] Docket 52 at ¶¶ 16–24.

[19] 28 U.S.C. § 1332(a); *see also* Docket 38 at ¶¶ 1–3.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 4 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 4 of 20

showing the absence of a genuine dispute of material fact lies with the movant.[20] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[21] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[22]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[23] Even when, as here, "both parties assert[] that there are no uncontested issues of material fact," a court still has the independent "responsibility to determine whether disputed issues of material fact are present."[24] Where a case contains undisputed facts and presents a pure question of law, the matter is suitable for resolution by summary judgment.[25]

---

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[21] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[22] *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[23] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[24] *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

[25] *See Smith v. Califano*, 597 F.2d 152, 155 n.4 (9th Cir. 1979) (holding that where "parties . . . have agreed on the material facts" and "the dispute involv[ed] the proper interpretation of relevant statutes and regulations[,] . . . the case could . . . be resolved as a matter of law, [and] summary judgment was the proper procedural device").

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 5 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 5 of 20

## DISCUSSION

Before the Court are four motions. First, Allstate seeks summary judgment on its claim for declaratory relief and requests a declaration that it does not owe a duty to pay UM/UIM or MedPay benefits to Mr. Fernside under the Policy.[26] Mr. Fernside cross-moves for summary judgment that the Policy includes UM/UIM and MedPay coverage that applies to the accident at issue here.[27] Additionally, Allstate moves for partial summary judgment on Mr. Fernside's counterclaim for breach of the implied covenant of good faith and fair dealing.[28] Finally, Allstate moves *in limine* to exclude certain portions of Mr. Fernside's expert's report.[29] The Court addresses each in turn.

### I. Allstate's Motion for Summary Judgment at Docket 73

Allstate moves for summary judgment on its claim for declaratory relief. It contends that the Policy's business use exclusion applies to preclude coverage of both UM/UIM and MedPay for the accident and that the Ride for Hire Endorsement that Mr. Fernside added to the Policy does not provide UM/UIM coverage that applied at the time of the accident.[30] In his opposition, Mr. Fernside insists that the Policy's business use exclusion does not apply to exclude either UM/UIM or

---

[26] Docket 73.

[27] Docket 77.

[28] Docket 83.

[29] Docket 91.

[30] Docket 73-1 at 13–18.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 6 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 6 of 20

MedPay coverage for the accident.[31] Additionally, Mr. Fernside submits that the business use exclusion as modified by the Ride for Hire Endorsement is not permitted by Alaska law and therefore cannot be enforced to deny UM/UIM coverage here.[32] In the alternative, Mr. Fernside maintains that the business use exclusion as modified by the Ride for Hire Endorsement does not exclude UM/UIM coverage under the circumstances.[33]

Whether Allstate has a duty to provide UM/UIM and MedPay coverage to Mr. Fernside turns on the construction of the Policy's business use exclusion and the Ride for Hire Endorsement. The Court must first determine whether the business use exclusion applies to Mr. Fernside's activities at the time of the accident. If the business use exclusion applies, Mr. Fernside's UM/UIM coverage hinges on the supplemental coverage that the Ride for Hire Endorsement provides. By contrast, Mr. Fernside's MedPay coverage turns solely on the application of the business use exclusion, as the Ride for Hire Endorsement did not modify this coverage.[34]

---

[31] Docket 78 at 10–15.

[32] Docket 78 at 15–18.

[33] Docket 78 at 18–21.

[34] *See* Docket 73-3 at 14.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 7 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 7 of 20

## A. The Policy's Business Use Exclusion Applies to this Accident

The Policy's business use exclusion applies to both Mr. Fernside's UM/UIM and MedPay coverage. This exclusion provides:

> [Allstate] will not pay any damages an insured person is legally entitled to recover because of: . . . bodily injury and property damage arising out of the use of: a) an insured auto while used to carry persons, products, or property for any form of compensation, including but not limited to fees, delivery charges or wages generally; or b) any auto an insured person is driving while available for hire by the public.[35]

Alaska state contract law controls the Court's interpretation of the Policy.[36] "In addressing the proper interpretation of an insurance policy [under Alaska law], [courts] look to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[37] "Insurance policies are construed in such a way as to honor the reasonable expectations of a layperson seeking coverage."[38] Alaska law directs courts to construe ambiguity in insurance policies in favor of the insured.[39] "Also

---

[35] Docket 73-3 at 40 (UM/UIM coverage); Docket 73-3 at 25–26 (MedPay coverage).

[36] *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

[37] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657–58 (Alaska 2011) (internal quotation marks and citation omitted).

[38] *United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013); *see also Safety Nat. Cas. Corp. v. Pac. Emps. Ins. Co.*, 927 P.2d 748, 750 (Alaska 1996) (internal quotations and citations omitted) ("Insurance contracts are interpreted in accordance with the reasonable expectations of the insured. This is true even if painstaking study of the policy provisions would have negated those expectations.").

[39] *Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 138 (Alaska 2007).

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 8 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 8 of 20

in the insured's favor is the rule that provisions of coverage should be construed broadly while exclusions are interpreted narrowly against the insured."[40]

The Court finds that clause (b) of the business use exclusion applies to Mr. Fernside's activities at the time of the accident, as he was "driving while available for hire by the public." At the time of the accident, Mr. Fernside was logged into the Lyft app and was accepting requests for rides made by the public.[41]

Mr. Fernside argues that the business use exclusion is inapplicable on two grounds. *First*, he suggests that "[h]aving committed to pick up a Lyft customer whose request he had accepted, Fernside was not 'available' to be hired by another customer."[42] But Mr. Fernside had enabled the Lyft app's auto-accept feature, which added additional riders to his queue whenever he was logged in, including as he drove.[43] Thus, he was "available for hire" even as he drove to pick up other passengers. *Second*, Mr. Fernside contends that he was not "available for hire by the public" because he was logged onto Lyft's network and could provide rides only to Lyft's customers.[44] However, the phrase "available for hire by the public" need not be so narrowly construed to honor the reasonable expectations of a layperson seeking coverage. Lyft's app is free and available to the public. A

---

[40] *Hahn v. Alaska Title Guar. Co.*, 557 P.2d 143, 144–45 (Alaska 1976).

[41] Docket 73-8 at 15–16; Docket 73-9 at 4.

[42] Docket 78 at 11.

[43] Docket 73-9 at 4.

[44] Docket 78 at 11.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 9 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 9 of 20

Lyft driver seeking insurance coverage would reasonably expect that they would be "available for hire by the public" when they are accepting ride requests through the Lyft app.

The business use exclusion thus applies to Mr. Fernside's activities at the time of the accident. And because the Ride for Hire Endorsement does not modify Mr. Fernside's MedPay coverage, Allstate does not owe Mr. Fernside a duty to pay out MedPay benefits under the Policy. Summary judgment is therefore warranted to Allstate with respect to the MedPay portion of the Policy.

### B. The Ride for Hire Endorsement Is Ambiguous and Must Be Construed to Extend UM/UIM Coverage to the Accident

Although the business use exclusion applies to Mr. Fernside's accident, the question remains as to whether the Ride for Hire Endorsement modified the business use exclusion such that the Policy provides UM/UIM coverage to Mr. Fernside at the time of the accident. The Ride for Hire Endorsement modifies the Policy's business use exclusion as it applies to UM/UIM coverage.[45] Specifically, the Ride for Hire Endorsement adds an exception to the business use exclusion in providing:

> This [business use] exclusion does not apply to bodily injury or property damage arising out of: . . . a TNC [transportation network company] driver's use of a TNC auto during the standby period, unless the TNC driver is carrying persons or property for a charge at the time of the accident.[46]

---

[45] Docket 73-3 at 13–14.

[46] Docket 73-3 at 14.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 10 of 20
Case 3:22-cv-00198-SLG    Document 106    Filed 09/10/24    Page 10 of 20

In effect, the Ride for Hire Endorsement extends UM/UIM coverage that the Policy otherwise excludes through the business use exclusion into the "standby period," except when the driver is carrying a person or delivery. The Ride for Hire Endorsement defines the "standby period" as:

> the time while the TNC driver is logged into or is otherwise accessing the TNC network or application but has not yet accepted a passenger or delivery assignment from the TNC or any other company that connects its customers to transportation services or provides transportation services. Once a standby period has ended, a new standby period may not begin until all TNC and other transportation network company assignments (including any associated tasks) have been completed or cancelled.[47]

Allstate contends that the Ride for Hire Endorsement does not provide UM/UIM coverage because the "standby period" during which the Endorsement applies does not include the period after which a driver has accepted a Lyft customer's request for a ride but has not yet picked up the customer.[48] Mr. Fernside responds that the accident falls within the Policy's "standby period" because "[a]t the time of the accident, [he] was logged into Lyft's network and was traveling to pick up a Lyft customer," but "was not carrying a passenger . . . and so had not accepted a passenger" nor accepted "a delivery assignment."[49] He further asserts that Allstate "asks the Court to read the phrase 'has not yet accepted a passenger or delivery assignment from the TNC' to mean 'has not yet accepted a

---

[47] Docket 73-3 at 13.

[48] Docket 73-1 at 13–18.

[49] Docket 78 at 19.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 11 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 11 of 20

passenger *assignment* or delivery assignment from the TNC'" and that such a reading would resolve any ambiguity in the clause improperly against the insured.[50]

Once again, to properly interpret the Policy under Alaska law, the Court "look[s] to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[51] In so doing, the Court seeks to construe the policy "in such a way as to honor the reasonable expectations of a layperson seeking coverage"[52] and resolves ambiguity in favor of the insured.[53] However, "ambiguity exists only when the contract, taken as a whole, is *reasonably* subject to differing interpretations."[54]

Here, the definition of the "standby period" is reasonably subject to different interpretations and is thus ambiguous.[55] The language of the definition of the "standby period" could be interpreted to either include or exclude the period in which a driver has agreed to transport a Lyft customer and is driving to pick them up. On one hand, principles of interpretation such as the "rule of last antecedent"

---

[50] Docket 78 at 19.

[51] *Houle*, 269 P.3d at 657–58 (internal quotation marks and citation omitted).

[52] *Neary*, 307 P.3d at 910 (Alaska 2013).

[53] *Falgoust*, 160 P.3d at 138.

[54] *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020) (internal quotations and citations omitted) (emphasis in original).

[55] *See Falgoust*, 160 P.3d at 138.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 12 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 12 of 20

suggest that "assignment" in the definition's phrase "has not yet accepted a passenger or delivery assignment" should be construed to solely modify delivery. The "rule of the last antecedent" is a canon of construction that provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."[56] Although the "rule of the last antecedent" is ordinarily used to construe statutes, courts have applied it to interpret contracts.[57] On the other hand, concluding that "assignment" only modifies "delivery" could result in an admittedly strange outcome in which the "standby period" includes the time during which a driver is traveling to pick up a Lyft customer, but not the time during which a driver is traveling to pick up an item for a delivery.[58] Furthermore, ambiguity exists with respect to whether "accepting a passenger" means accepting a customer's request for a ride via the Lyft app or instead means physically allowing the customer into a vehicle, at which time the customer then becomes a passenger. Allstate argues that "in this context, to

---

[56] *See Barnhart v. Thomas,* 540 U.S. 20, 26 (2003); *see also* Black's Law Dictionary 1532–1533 (10th ed. 2014) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing.").

[57] *See, e.g., ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 53 Cal. Rptr. 3d 786, 796 (Cal. Ct. App. 2007) (noting courts have applied the rule of contracts and specifically to interpret insurance policy language); *Milne v. Milne Constr. Co.,* 142 P.3d 475, 477 n.3 (Or. Ct. App. 2006).

[58] However, the phrase "accepted a . . . delivery assignment" could be read to mean that the driver remains on standby until the driver physically accepts the package into the driver's vehicle, which would be consistent with interpreting the phrase "accepting a passenger" as occurring only when the Lyft customer physically enters the driver's vehicle.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 13 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 13 of 20

'accept' is 'to agree to undertake (a responsibility).'"[59] But the same dictionary Allstate cites in support of its definition alternatively defines "accept" as "to give admittance . . . to," which supports Mr. Fernside's suggested interpretation of the phrase.[60] Moreover, that dictionary defines "passenger" as "a traveler in a public or private conveyance."[61] Under that definition, a Lyft customer using the Lyft app to request a ride is not a passenger until that customer enters the Lyft driver's vehicle, which further supports Mr. Fernside's suggested interpretation.

Ultimately, the definition of the "standby period" is reasonably susceptible to different interpretations with respect to whether it includes the time during which a driver is traveling to pick up a passenger after accepting a request for a ride. Therefore, this Court must adhere to the Alaska Supreme Court's admonition that courts should construe ambiguity in insurance policies in favor of the insured and conclude that Mr. Fernside's activities at the time of the accident fell within the "standby period."[62] Allstate owes Mr. Fernside a duty to pay UM/UIM coverage because the Ride for Hire Endorsement extends UM/UIM coverage into the

---

[59] Docket 81 at 10 (citing *Accept*, Merriam-Webster.com, https://www.merriamwebster.com/dictionary/accept (last visited Sept. 9, 2024)).

[60] *Accept*, Merriam-Webster.com, https://www.merriamwebster.com/dictionary/accept (last visited Sept. 9, 2024)

[61] *Passenger*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/passenger (last visited Sept. 9, 2024); *see also* p*assenger,* Cornell Law School Legal Information Institute, https://www.law.cornell.edu/wex/passenger (last visited Sept. 9, 2024) (defining passenger as "an occupant of a car, train, boat, airplane or other transportation vehicle other than the person operating it or a member of the crew.").

[62] *Falgoust*, 160 P.3d at 138.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 14 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 14 of 20

"standby period." Accordingly, Allstate's request for summary judgment and a declaration that Allstate does not owe such a duty must be denied. Allstate's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## II. Mr. Fernside's Motion for Summary Judgment at Docket 77

Mr. Fernside cross-moves for summary judgment and a declaration that he is entitled to MedPay and UM/UIM coverage under the Policy. Mr. Fernside's motion relies on precisely the same undisputed facts and raises the same issues the Court analyzed above for purposes of Allstate's motion for summary judgment.

When a court receives cross-motions for summary judgment, it "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[63] Here, however, the parties present the same undisputed facts and raise purely legal issues. Accordingly, the Court's analysis of Allstate's Motion for Summary Judgment applies equally to Mr. Fernside's motion. Allstate owes Mr. Fernside a duty to pay UM/UIM coverage for the accident but does not owe a duty to pay MedPay coverage. Therefore, Mr. Fernside's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## III. Allstate's Motion for Summary Judgment on Mr. Fernside's Bad Faith Claim at Docket 83

Allstate moves for summary judgment on Mr. Fernside's counterclaim for breach of the implied covenant of good faith and fair dealing. Allstate asserts

---

[63] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 15 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 15 of 20

summary judgment on this claim is warranted because it did not deny Mr. Fernside's claim, it acted appropriately in filing this declaratory action, and there are genuine disputes as to the Policy's coverage.[64] Mr. Fernside responds that "[n]ot only has Allstate denied [him] coverage . . . [but] it has filed this lawsuit against him, seeking a declaratory judgment . . . even though it knows or should know that the exclusionary language on which its coverage denial is based is invalid and unenforceable as a matter of long-established Alaska law."[65]

All contracts in Alaska carry an implied duty of good faith and fair dealing.[66] For insurance contracts, "breach of this covenant by the insurer gives the insured a cause of action sounding in tort," which is commonly referred to as the tort of bad faith in the insurance context.[67] The Alaska Supreme Court has not precisely defined the elements of the tort of bad faith in this context.[68] However, this Court has previously "identified two elements: (1) that the insurer lacked a reasonable basis for denying coverage and (2) that the insurer had knowledge that no

---

[64] Docket 83 at 8–15.

[65] Docket 94 at 5.

[66] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014).

[67] *Id.*

[68] *Id.* ("Although we have declined to define the elements of the tort of bad faith in an insurance contract, our precedent makes clear that the element of breach at least requires the insured to show that the insurer's actions were objectively unreasonable under the circumstances.").

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 16 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 16 of 20

reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim."[69]

In his Answer and Counterclaims, Mr. Fernside alleged that "Allstate breached the implied covenant of good faith and fair dealing by. . . denying [his] UM/UIM claim without a reasonable basis."[70] In particular, Mr. Fernside alleges the coverage denial was unreasonable because Allstate based its denial on exclusionary language that is not authorized by law and was therefore unenforceable.[71]

Although Mr. Fernside alleges a bad faith claim based on a denial of UM/UIM coverage, the record lacks evidence that any such denial occurred. Indeed, Allstate filed the instant action for declaratory relief in order to determine whether it owed Mr. Fernside a duty to pay out UM/UIM benefits in lieu of denying Mr. Fernside's claim.[72] The Alaska Supreme Court has noted that it is appropriate for an insurer to file a declaratory action when it is uncertain as to its obligations and that the filing of such an action does not constitute bad faith.[73] Moreover, even if

---

[69] *KICC-Alcan Gen., Joint Venture v. Crum & Forster Specialty Ins. Co., Inc.*, 242 F. Supp. 3d 869, 880 n.98 (D. Alaska 2017) (internal quotations and citations omitted).

[70] Docket 52 at 8.

[71] Docket 52 at 8–9.

[72] *See* Docket 1 at 10 (seeking a declaration that Allstate has no duty to provide coverage to Mr. Fernside for uninsured motorist coverage); Docket 38 at 9 (same).

[73] *Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1228 & n.26 (Alaska 2013) ("If an insurer is unclear as to its policy requirements it should file a declaratory action to resolve the issue . . .").

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 17 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 17 of 20

Allstate had denied Mr. Fernside's claim, it had a reasonable basis to do so. This Court has previously noted that "[t]he Alaska Supreme Court has clearly held that insurers act reasonably where they take a defensible legal position about the extent of their liability or the interpretation of the law."[74] As discussed, the Policy contained ambiguities with respect to Allstate's duties to cover Mr. Fernside's UM/UIM claims related to the accident.

Finally, Mr. Fernside suggests that Allstate acted in bad faith because its coverage denial is "unenforceable as a matter of long-established Alaska law."[75] Specifically, he asserts that "neither [Alaska Statute § 21.96.018] nor any other Alaska statute permit an insurer to exclude coverage arising out of an insured's use of a vehicle 'to carry persons . . . for compensation' or 'while available for hire by the public'" as this language reduces coverage below the statutory minimum.[76] But Alaska law specifically permits an insurer that personally insures a transportation network company driver to exclude coverage while the insured is logged onto Lyft's app or providing a prearranged ride.[77] And Fernside provides no indication that any Alaska court has held that such an exclusion is at odds with

---

[74] *U.S. ex rel. N. Star Terminal & Stevedore Co. v. Nugget Const., Inc.*, Case No. 3:98-cv-00009-TMB, 2006 WL 2251122, at *5 (D. Alaska July 28, 2006) (first citing *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1325 (Alaska 1993); and then citing *Peter v. Progressive Corp.*, Case No. S-11416, 2006 WL 438658 at * 6 (Alaska Feb. 22, 2006)).

[75] Docket 94 at 5.

[76] Docket 78 at 17.

[77] Alaska Stat. § 21.96.018(a); *see also* Alaska Stat. § 21.96.018(b)(1).

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 18 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 18 of 20

any other provision of Alaska law. Further, Alaska law makes clear that such policy exclusions need not "use specific policy language . . . to exclude any and all coverage for any loss or injury that occurs while a driver" is logged into Lyft's app or provides a prearranged ride.[78] Lastly, Alaska Statute § 28.23.050, which requires transportation network companies to maintain insurance meeting certain requirements for their drivers, does not apply here, as Allstate was Mr. Fernside's personal automobile insurer, not Lyft's insurer. Thus, Allstate's business use exclusion in Mr. Fernside's policy does not run counter to Alaska law.

No bad faith claim is sustainable because Allstate had a reasonable basis to file an action for declaratory relief to resolve the ambiguities in the policy and acted consistent with Alaska law. Accordingly, summary judgment dismissing Mr. Fernside's counterclaim for bad faith is **GRANTED**.

### IV. Allstate's Motion *in Limine* at Docket 91

Finally, Allstate moves *in limine* to exclude at trial certain portions of the report by Mr. Fernside's proffered expert, Bret Follett.[79] The motion is **DENIED AS MOOT** as the Court has ruled as a matter of law on the issues to which the challenged portions of Mr. Follett's report address, namely conclusions with

---

[78] Alaska Stat. § 21.96.018(b)(2).

[79] Docket 91.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 19 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 19 of 20

respect to Allstate's alleged bad faith, interpretation of the business use exclusion and Ride for Hire Endorsement, and interpretation of Alaska insurance law.[80]

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Allstate has no duty to Mr. Fernside to provide automobile medical payment coverage under the Policy for claims related to the July 17, 2021 accident.

2. Allstate has a duty to Mr. Fernside to provide uninsured/underinsured motorist coverage under the Policy for claims related to the July 17, 2021 accident.

IT IS ORDERED THAT:

1. Allstate's Motion for Summary Judgment at Docket 73 is **GRANTED IN PART AND DENIED IN PART**.

2. Mr. Fernside's Motion for Partial Summary Judgment at Docket 77 is **GRANTED IN PART AND DENIED IN PART**.

3. Allstate's Motion for Partial Summary Judgment at Docket 83 is **GRANTED**.

4. Allstate's Motion *in Limine* at Docket 91 is **DENIED AS MOOT**.

DATED this 10th day of September 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[80] Docket 91-1 at 1–2.

Case No. 3:22-cv-00198-SLG, *Allstate Fire & Casualty Ins. Co. v. Fernside*
Order Re Pending Motions
Page 20 of 20
Case 3:22-cv-00198-SLG   Document 106   Filed 09/10/24   Page 20 of 20